Stanley JOHNSON *v.* McKEE FOODS, Risk Management Resources and Permanent & Total Disability Trust Fund

CA 06-1045                                                      255 S.W.3d 478

Court of Appeals of Arkansas
Opinion delivered April 11, 2007

*Odom Law Firm*, by: *Conrad T. Odom*, for appellant.

*Bassett Law Firm, LLP*, by: *Curtis L. Nebben*, for appellee.

LARRY D. VAUGHT, Judge. Appellant Stanley Johnson appeals the Commission's denial of his claim for wage-loss benefits against appellee McKee Foods. The Commission found that Johnson failed to comply with Ark. Code Ann. § 11-9-505(b)(3) (Repl. 2002) by refusing to cooperate in an offered program of job-placement assistance without reasonable cause. Johnson argues that these findings are not supported by substantial evidence because he did cooperate with job-placement assistance, and to the extent he did not, his refusal was based on reasonable cause. We hold that the Commission's decision demonstrates a substantial basis for the denial of benefits and affirm.

Johnson, a man in his mid-fifties, testified that he worked as a railroad foreman for seventeen years and that in 1987 he began driving trucks for a living. On October 6, 2003, he was driving a

truck for McKee when he suffered an admittedly compensable injury to his back. Dr. Luke Knox performed surgery in February 2004. Thereafter, Johnson participated in physical therapy, a work-hardening program, and had a functional-capacity evaluation. The FCE evaluator, in his report, stated that Johnson gave a reliable, full effort during the exam and concluded that he was not able to return to his previous line of work but was able to return to work at the "less than sedentary physical demands level." The FCE evaluator also imposed multiple, specific restrictions on Johnson's activities.

In October 2004, Dr. Knox issued Johnson an eleven-percent impairment rating. Johnson continued to receive medical treatment thereafter as Dr. Knox referred Johnson to Dr. David Cannon for epidural-steroid injections. The injections were of little benefit, and Johnson continued under the care of Dr. Knox.

McKee hired Re-Employment Services to assist with returning Johnson to the workplace. Johnson testified that he was contacted by RES by telephone for an interview that lasted approximately five minutes. RES concluded that job retraining was not recommended but did send Johnson information about two job openings in the mail. The first position was as an admissions clerk at a local hospital, which had an hourly rate of $8.50, and the second position was as a customer-service representative, which had an hourly rate of $8.00. Dr. Knox approved both of these jobs; however, Johnson admitted he did not pursue them. He reported to RES that he could not perform the jobs and that he was not familiar with computers. He testified that if he accepted one of these jobs, his income would be substantially less than what he was earning at McKee. Further, he was concerned that if he accepted one of these jobs, he might lose the $1850 per month in railroad disability he was receiving. He testified that he eventually refused to accept and/or open mail sent to him by RES.

Based on this evidence, the administrative law judge held that McKee met its burden of proving that Johnson was not entitled to wage-loss benefits because he refused, without reasonable cause, to cooperate with job-placement assistance offered by McKee as required by Ark. Code Ann. § 11-9-505(b)(3). The Commission affirmed and adopted the ALJ's opinion.

The sole issue on appeal is whether there is substantial evidence to support the application of Ark. Code Ann. § 11-9-505(b)(3), thereby precluding Johnson from receiving wage-loss

benefits. In reviewing decisions from the Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirm if they are supported by substantial evidence, i.e., evidence that a reasonable person might accept as adequate to support a conclusion. *Logan County v. McDonald*, 90 Ark. App. 409, 206 S.W.3d 258 (2005). The issue is not whether we might have reached a different result from that reached by the Commission, or whether the evidence would have supported a contrary finding. *Id*. We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Id*.

The wage-loss factor is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. *Emerson Elec. v. Gaston*, 75 Ark. App. 232, 58 S.W.3d 848 (2001). To be entitled to wage-loss disability in excess of permanent-physical impairment, a claimant must first prove, by a preponderance of the evidence, that he sustained permanent-physical impairment as a result of a compensable injury. *Wal-Mart Stores, Inc. v. Connell*, 340 Ark. 475, 10 S.W.3d 727 (2000). Johnson was issued an eleven-percent permanent-impairment rating, which was accepted by McKee. Therefore, the impairment-rating prerequisite has been satisfied.

In making a wage-loss disability determination, the Commission should examine the medical evidence, the worker's age, his education, his work experience, and any other matters that may affect future-earning capacity, including motivation and attitude about re-entering the work force. Ark. Code Ann. § 11-9-522(b); *see also Emerson Elec.*, *supra*. However, there is a statutory limitation regarding wage loss found in Ark. Code Ann. § 11-9-505(b)(3), which states:

> The employee shall not be required to enter any program of vocational rehabilitation against his or her consent; however, no employee who waives rehabilitation or refuses to participate in or cooperate for reasonable cause with either an offered program of rehabilitation or job placement assistance shall be entitled to permanent partial disability benefits in excess of the percentage of permanent physical impairment established by objective physical findings.

An employer relying upon the defense enumerated in § 11-9-505(b)(3) must show that the claimant refused to participate in a

program of vocational rehabilitation or job-placement assistance, or, through some other affirmative action, indicated an unwillingness to cooperate in those endeavors, and that such refusal to cooperate was without any reasonable cause. *See Burris v. L&B Moving Storage*, 83 Ark. App. 290, 123 S.W.3d 123 (2003).

In support of his case, Johnson cites to *Nicholas v. Hempstead County Memorial Hospital*, 9 Ark. App. 261, 658 S.W.2d 408 (1983) for the proposition that a claimant is not precluded from receiving wage-loss disability even if he refuses to participate in or cooperate with rehabilitation efforts. *Nicholas* is inapplicable because it was decided under prior law, Ark. Stat. Ann. 81-1310(f) (Repl. 1976),[1] which differs significantly from the statute applicable to the instant case.

McKee cites to *Williams v. St. Vincent Infirmary*, 59 Ark. App. 148, 954 S.W.2d 302 (1997) and claims that in *Williams* we held that a claimant was not entitled to wage-loss benefits despite her participation in a job-placement program. *Williams* is of no benefit to McKee as Williams was not offered vocational rehabilitation or job-placement assistance under the purview of § 11-9-505(b)(3). Rather, she participated in a work-hardening program and was offered a different job by her employer. The only issue in that case was wage-loss/permanent-total disability. Section § 11-9-505(b)(3) was never presented, or even mentioned.[2]

In the instant case, there is no evidence that McKee offered a plan of rehabilitation to Johnson. In fact, the RES report stated that vocational rehabilitation was not recommended. There is evidence, however, that McKee offered job-placement assis-

---

[1] Ark. Stat.Ann. § 81-1310(f) (Repl. 1976) provided that: "The employee shall not be required to enter any program of vocational rehabilitation against his consent. A request for such program, if elected by the claimant, must be filed with the Commission prior to a determination of the amount of permanent disability benefits payable to such employee."

[2] Our research has uncovered two published cases that address § 11-9-505(b)(3). One is *Burris, supra,* where we affirmed the Commission's decision to award wage loss because there was no evidence in the record that the claimant refused rehabilitation. In the second case, *Lohman v. SSI, Inc.*, 94 Ark.App. 424, 232 S.W.3d 487 (2006), we held that there was a lack of substantial evidence that the claimant (who, because of his work-related injury, became addicted to narcotics and depressed) refused rehabilitation without reasonable cause, and therefore we reversed and remanded the case to the Commission for a decision on wage loss. While *Burris* and *Lohman* demonstrate the proper application of § 11-9-505(b)(3), these cases provide us little guidance as the facts in these two cases are distinguishable from the facts in the instant case.

tance to Johnson. There is also clear evidence that Johnson refused to accept the job-placement assistance. He did not pursue the two jobs identified by RES, he reported to RES that he was unable to work those jobs, and he refused to accept and/or read mail that RES sent him about other jobs. Based on this evidence, we believe that fair-minded persons could conclude that Johnson refused to cooperate with job-placement assistance.

■ The next question we must consider is whether Johnson refused to cooperate for reasonable cause. Based on the evidence, we also believe fair-minded persons could conclude that Johnson refused, without reasonable cause, to cooperate with RES's efforts to return Johnson to work. For example, while Johnson testified that he did not think he could perform the jobs suggested by RES, the Commission pointed to medical evidence of Dr. Knox who not only opined that Johnson could return to work as per the FCE restrictions but he also approved the two jobs suggested by RES.

Also, Johnson testified that he had no financial motivation to pursue the jobs suggested by RES because if he accepted one of the jobs he might earn substantially less than he was making at McKee. However, as was noted by the Commission, had Johnson accepted one of the jobs he would have been eligible for wage-loss disability pursuant to Ark. Code Ann. § 11-9-522(b), which would have supplemented his income.

The Commission should not be reversed unless it is clear that fair-minded persons could not have reached the same conclusion if presented with the same facts. *Foxx v. American Transp.*, 54 Ark. App. 115, 924 S.W.2d 814 (1996). After consideration of this appeal under the proper standard of review, we affirm.

Affirmed.

GLADWIN and BIRD, JJ., agree.